**UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT OWENSBORO**

**CIVIL ACTION NO. 4:11-CV-00149-JHM**

**STATE AUTOMOBILE PROPERTY &
CASUALTY COMPANY**                                                                **PLAINTIFF**

**v.**

**THERE IS HOPE
By and Through Its Pastor, Darrell Blacklock**                         **DEFENDANT**

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION TO EXCLUDE
THE TESTIMONY OF CHARLES HOWARTH**

Comes the Plaintiff, State Automobile Property and Casualty Company ("State Auto"), by and through counsel, and hereby brings the following Memorandum of Law in Support of its Motion to Exclude the Testimony of Charles Howarth, stating as follows:

**INTRODUCTION**

Charles Howarth ("Howarth") has been designated by the Defendant as a testifying expert in this action.[1] Howarth has almost 35 years of experience in the insurance business and currently owns and operates a consulting and public adjusting firm in Tennessee.[2] Given his background in the industry, State Auto does not generally contest Howarth's experience, training or education in insurance matters. However, his proffered testimony in this particular case is troubling for three reasons. First, expert witnesses may not be paid under contingency fee arrangements, and Howarth has been retained by Defendant pursuant to such an arrangement. Second, Howarth's testimony is not the product of reliable principles and methods because he

---

[1] Howarth Dep. 89:21-90:5. A copy of Howarth's deposition is attached hereto as Exhibit 1.
[2] Howarth Dep. 5:22-6:6, 8:13-9:20; The Howarth Group, *About Page*, http://www.thehowarthgroup.com/about.php (last visited Dec. 2, 2013).

cannot explain the underlying facts and data upon which his opinion is based. Third, much of Howarth's proposed testimony is not only i) outside the scope of his "expert report," but also ii) improper subject matter for any witness, and iii) contrary to Kentucky law. For all of these reasons, Howarth should be excluded from testifying in this case.

## ARGUMENT

**A.     Howarth's report and testimony are not sufficiently reliable and should be excluded because he is being compensated under a contingency fee arrangement.**

Ethical rules have long prohibited the compensation of witnesses on a contingent basis. Rule 3.4 of the Kentucky Rules of Professional Conduct provides that "[a] lawyer shall not…knowingly falsify evidence, counsel or assist a witness to testify falsely, *or offer an inducement to a witness that is prohibited by law*."[3] An ethics opinion issued by the Kentucky Bar Association confirms that, in this state, expert witnesses may only be paid on an hourly or flat fee basis.[4] Kentucky's rules are in line with the broad national consensus that payment to experts may not be contingent upon the outcome of the case.[5]

The justification for this prohibition is obvious: the contingency fee payments transform the expert into an interested party and compromise the expert's objectivity.[6] The usefulness of an expert witness "depends in large measure on the degree to which the expert is able to convince the trier of facts of his or her strict and unyielding impartiality to both the parties and their

---

[3] SCR 3.130(3.4)(b)(emphasis added). Cmt. 3 to this rule explains "[t]he common law rule in most jurisdictions is that it is…improper to pay an expert witness a contingent fee."
[4] Kentucky Bar Ass'n Ethics Op. No. E-394.
[5] *See, e.g.*, *Crowe v. Bolduc*, 334 F.3d 124, 132, 61 Fed. R. Evid. Serv. 885 (1st Cir. 2003)("The majority rule in this country is that an expert may not collect compensation which by agreement was contingent on the outcome of a controversy."); *Farmer v. Ramsay*, 159 F. Supp. 2d 873, 883 (D. Md. 2001) aff'd, 43 F. App'x 547 (4th Cir. 2002)("Under the common law in most jurisdictions…it is improper to pay an expert witness a contingent fee.").
[6] *See, e.g.*, Handbook of Federal Evidence § 702:3 ("It is improper for an expert to be compensated on a contingent fee basis…the prohibition has been upheld on the ground that the inducement placed upon the expert by a contingent fee to tailor his testimony is too great.").

counsel, and to the issues in the case."[7] If an expert's payment is contingent on the ultimate outcome of the litigation, the "reliability of the testimony and impartiality of the expert's position will be significantly weakened."[8] Courts strictly observe the rule, noting that it is intended to avoid even potential bias.[9] For example, one opinion held a witness contingency fee contract invalid although it was made after all testimony had already been given in the case.[10]

Howarth is being compensated under a contingency fee arrangement in this matter. Paragraph 3 of Howarth's employment agreement provides:

> The Insured agrees to pay THG [The Howarth Group] in consideration for its services an hourly rate of $295.00 per hour together with all expenses reasonably incurred in the appraisal. However…THG agrees that <u>the hourly rate charged will not exceed thirty percent (30%) of the additional settlement</u> awarded to the Insured, and additionally, <u>should the process produce no additional settlement then no fee will be due</u>.[11]

A subpoena of Howarth's records relating to this case yielded no amendment to this agreement after litigation was commenced. This compensation scheme is contingent by definition. The term "contingency fee" encompasses any fee in which compensation depends in whole *or in part* on the outcome of litigation.[12] In his deposition, Howarth unequivocally acknowledged that in this case his contingency fee structure would allow him to benefit from a larger recovery by the Defendant:

---

[7] *City & County of Denver v. Bd. of Assessment Appeals*, 947 P.2d 1373, 1379 (Colo. 1997), citing 1 Douglas Danner & Larry L. Varn, Expert Witness Checklists § 1:54 (1993).
[8] *Id*.
[9] *Crowe*, 334 F.3d at 132 (citations omitted).
[10] *Pelkey v. Hodge*, 112 Cal. App. 424, 296 P. 908 (1931)(the "evil tendency", not the actual injury, made the contract invalid).
[11] See attached Exhibit 2, Appraisal Employment Agreement (emphasis added). Howarth had previously concealed the specific terms of his retention from State Auto, until he produced an unredacted copy under subpoena.
[12] BLACK'S LAW DICTIONARY (9th ed. 2009)(defining "Reverse Contingent Fee" within the definition of "Contingent Fee"); Utah Code Ann. § 78B-1-152 (West)(defining "Contingent Fee Agreement" as "an agreement for the provision of testimony or other evidence and related services by an expert witness in a civil action that specifies…the payment of compensation to the expert witness for the testimony, other evidence, and services is contingent, in whole or in part, upon a judgment being rendered in favor of the plaintiff or defendant…"); Colo. Rev. Stat. Ann. § 13-17-303 (West)(defining "Contingent Fee" as "a fee for legal services that is contingent in whole or in part upon the successful outcome of the matter for which the legal services were retained.").

> Q: So based upon this particular term of compensation, is it not true then that the bigger the recovery for the insured the less likely your hourly rate is going to be subject to that cap?
>
> A: Yeah. For the larger commercial losses, our hourly rate never gets to the cap, almost never. This was not a larger loss, so it was probably going to get to the cap.[13]

Howarth has an obvious financial incentive to perform his calculations in such a way as to maximize his estimate of the subject loss.[14] Doing so ensures the 30% "cap" in his fee contract will not restrict his hourly pay. However, this is not the only aspect of Howarth's compensation that is contingent. Per the terms of his retention agreement, he is not entitled to *any* fee if the process does not produce an "additional settlement" for the Defendant (i.e., a successful outcome in this litigation). As a result of this employment agreement, Howarth is an interested party and his testimony is not sufficiently reliable under either the common law or Federal Rule of Evidence 702.[15]

As addressed above, courts have consistently found expert contingency fee arrangements to be against public policy.[16] The judicial response in such situations is to exclude the witness and to strike his or her expert report.[17] Accordingly, State Auto requests an Order from this Court excluding Howarth's report and testimony in whole, because he is being compensated under an impermissible contingency fee agreement.

---

[13] Howarth Dep. 35:4-11.
[14] The fact Howarth prepared his estimate prior to this litigation is immaterial. *See, e.g., Gediman v. Sears, Roebuck & Co.*, 484 F. Supp. 1244, 1248 (D. Mass. 1980)("It is true that [the appraiser] was not hired to, and did not, prepare his figures for use in the case at bar. However, he used in the case at bar figures that he had prepared under exactly the same temptations of self interest. Any distinction is lacking in substance.").
[15] The reliability requirements of FRE 702 are discussed in more detail *infra*.
[16] *Goodyear Tire & Rubber Co. v. Overman Cushion Tire Co.*, 95 F.2d 978, 982 (6th Cir. 1937)("The general rule unquestionably is that a contract to give testimony for a compensation contingent on the outcome of the case is illegal.").
[17] *See, e.g.*, *Followwill v. Merit Energy Co.*, 2005 WL 5988695, *1 (D. Wyo. 2005) (granting defendants' motion to exclude plaintiffs' expert witness and strike his expert report because the witness was being paid on a contingency basis); *Farmer*, 159 F. Supp. 2d at 883–84 (finding the existence of an improper contingency fee agreement with one of plaintiff's expert witnesses and striking that expert's reports); *Cosgrove v. Sears Roebuck and Co.*, 1987 WL 33595, *1-*2 (S.D. N.Y. 1987)(excluding plaintiff's expert witness because the witness was hired on a contingency fee basis).

**B.     In the alternative, Howarth's report and testimony should be excluded as unreliable because he is unable to adequately explain his methodology.**

The admissibility of expert testimony is expressly governed by Rule 702 of the Federal Rules of Evidence, which provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and
> (d) the expert has reliably applied the principles and methods to the facts of the case.

The rule "clearly contemplates some degree of regulation of the subjects and theories about which an expert may testify."[18] In *Daubert*, the Supreme Court held that Rule 702 imposes a "gatekeeping" obligation on the trial court to ensure expert testimony "is not only relevant, but reliable."[19] This gatekeeping function applies to testimony regarding technical or other specialized knowledge, and not just to scientific testimony.[20]

*Daubert* and *Kumho* require a two-step inquiry that analyzes the relevance and reliability of an expert's opinion.[21] During the relevance step, the court is to ensure there is a "fit" between the testimony and the issue to be resolved by the trial.[22] During the reliability step, the court focuses on the methodology and principles that form the basis for the expert's testimony.[23] The court is to examine the reliability of the methodology and principles underlying the testimony, not the reliability of the conclusions reached by the expert because "if the principles,

---

[18] *Daubert v. Merrell Dow Pharmaceuticals*, 509 U.S. 579, 589 (1993).
[19] *Id.*
[20] *Kumho Tire v. Carmichael*, 526 U.S. 137, 141 (1999).
[21] *Greenwell v. Boatwright*, 184 F.3d 492, 496 (6th Cir. 1999).
[22] *Id.*, citing *United States v. Bonds*, 12 F.3d 540, 555 (6th Cir. 1993).
[23] *Id.*

methodology and reasoning are scientifically valid then it follows that the inferences, assertions, and conclusions derived therefrom are scientifically valid as well."[24]

In this matter, Howarth utilized a software program called "Xactimate" in estimating the insured's loss.[25] This program allows the user to input a number of variables reflecting the extent of the physical area that sustained damage (so many square feet of drywall, so many square feet of carpeting, etc.) and then provides a line-by-line cost estimate for each portion of the repair work. In calculating these costs, the software factors in an unknown sum or percentage of profit and overhead.

The problem with Howarth's use of this program arises because he cannot adequately explain how Xactimate determines its pricing and cost estimates. Apart from his assurance that Xactimate is "widely-respected and trusted,"[26] Howarth was otherwise unable at deposition to confirm any real-world accuracy of the cost figures used in his estimate:

> Q. Do you know how Xactimate determines – let's say for example, on the first page of the estimate, Unit cost $3.39 for repair or remove and replace metal roofing; do you have any idea how Xactimate compiled the figures to arrive at that unit cost for the BG7X price list?
>
> A. I don't know exactly. I don't specifically know how Xactimate goes about it. I know in general how estimating programs do, but not specifically Xactimate.[27]

This information is crucial to present to a jury. Howarth's rebuilding cost estimate using Xactimate was nearly twice as high as State Auto's rebuilding cost estimate. The jury needs to know how Exactimate determines its pricing so it can determine whether such methodology is more accurate than that relied upon by State Auto.

---

[24] *Id.* at 497, quoting *Bonds*, 12 F.3d at 556.
[25] Howarth Dep. 44:15-17. This estimate (the "Howarth Estimate") is attached as Exhibit 3. Xactimate is published by Xactware Solutions, Inc. and is a registered trademark of that company. http://www.xactware.com /(accessed November 26, 2013).
[26] Howarth Dep. 48:22-24.
[27] Howarth Dep. 48:13-21.

Courts regularly exclude the testimony of expert witnesses who cannot or do not explain the bases for their conclusions.[28] Experts who use unexplained methodologies in forming their opinions are not helpful to the jury, and consequently their testimony does not satisfy the requirements of Rule 702.

Moreover, other than inputting numbers he believed to be correct concerning room and building dimensions, Howarth failed to use any alternate methodology concerning rebuilding costs, to verify the program's calculations were reliable in comparison to reality:

> Q: After you prepared this estimate, did you ever cross-check any of the items in here with the cost that a contractor or lumber yard in the Bowling Green area was actually charging for these items?
>
> A: No. Because, to do that, you've left one world and gone into another. The Xactimate estimating approach to arrive at a bottom-line number is completely different than that approach that the construction industry uses outside of the use of this (indicating) as a tool.[29]

In summary, Howarth's methodology falls short of *Daubert*'s standard for reliability. The Defendant (and Howarth specifically) has made no effort to explain or verify the underlying cost data resulting in the data outputs produced by Xactimate. It is unknown whether these estimates are reflective of the true costs that are involved in rebuilt. The trier of fact will have no information to assist in determining whether the costs represented in the Xactimate program are realistic or accurate. Accordingly, Howarth's report and testimony should be excluded because they are not sufficiently reliable.

---

[28] *Valentine v. Pioneer Chlorine Alkali Co.*, 921 F. Supp. 666, 671-72 (D. Nev. 1996)(excluding inadequately explained expert testimony); *Thomas v. Cumberland Cnty.*, CIV.A. 09-1323 JBS, 2012 WL 3780452 (D.N.J. Aug. 31, 2012)("As [the defendant's expert] has failed to explain his methodology, the Court is unable to consider its reliability against the eight factors articulated in *Daubert* and *Downing*.").
[29] Howarth Dep. 49:19-50:3.

**C.     If Howarth's report and testimony are not excluded in their entirety, his testimony should be limited to the information contained in his estimate.**

**1.     The Defendant has not complied with the expert disclosure requirements of the Federal Rules of Civil Procedure.**

Federal Rule of Civil Procedure 26(a)(2)(B) governs required disclosures for testifying expert witnesses. The disclosure of the identity of any testifying expert must be accompanied by a report which contains the following information:

(i)     a complete statement of all opinions the witness will express and the basis and reasons for them;
(ii)    the facts or data considered by the witness in forming them;
(iii)   any exhibits that will be used to summarize or support them;
(iv)    the witness's qualifications, including a list of all publications authored in the previous 10 years;
(v)     a list of all other cases in which, during the previous 4 years, the witness testified as an expert at trial or by deposition; and
(vi)    a statement of the compensation to be paid for the study and testimony in the case.

It is widely accepted that expert reports must include the "how" and "why" concerning the expert's results, not just conclusory opinions.[30] Reports omitting the substance of an expert's opinions risk being rejected by the court as insufficient because they do not adequately serve Rule 26's notice and preparation purposes.[31] When a report fails to disclose the specific information or methodologies underlying the expert's opinions, it is useless in preparing for trial.[32] With regard to the proper timing of these disclosures, they must be made "at the times and in the sequence that the court orders."[33]

---

[30] *Cohlmia v. Ardent Health Services, LLC*, 254 F.R.D. 426, 430 (N.D. Okla. 2008).
[31] *R.C. Olmstead, Inc., v. CU Interface, LLC*, 606 F.3d 262, 271 (6th Cir. 2010) (report that set forth conclusions without any basis or reasoning was deficient).
[32] *Id.*; *See also Pena–Crespo v. Puerto Rico*, 408 F.3d 10, 13 (1st Cir. 2005); *Upsher-Smith Labs., Inc. v. Mylan Labs., Inc.*, 944 F. Supp. 1411, 1440 (D. Minn. 1996)("Moreover, the reports wholly fail to disclose, in any intelligible way, the facts and rationale which underlie the opinions expressed. As such, the reports provide virtually no assistance to opposing counsel in preparing to cross-examine [the] experts").
[33] Fed. R. Civ. P. 26(a)(2)(D).

The pre-trial discovery deadline in this action was November 15, 2013.[34] The Defendant did not submit a fully compliant expert witness report before this deadline. The only document Howarth authored relating to coverage under the subject policy is the Howarth Estimate, which merely addresses replacement cost value.[35] Howarth's "report" provides a limited disclosure of items (i) and (ii) of Rule 26(a)(2)(B), but is silent on the requirements of (iii) through (vi). This failure alone is adequate grounds for excluding Howarth as an expert in this matter.[36]

2.   **Howarth's proposed testimony well exceeds the scope of his "report."**

Courts have broad discretion to exclude opinions that are presented after discovery is closed and that are not presented in expert reports.[37] Howarth plans to offer a number of opinions that do not appear in what purports to be the required written report (the Howarth Estimate). Specifically, he seeks to opine (a) that State Auto's determination of the Defendant's loss was conducted in an unusual method; and (b) how, under either the Policy or the law, State Auto was required to make this determination. The following excerpts from Howarth's deposition are representative of this proposed testimony:

> Q:   Do you recall what about [State Auto's calculation] specifically did not make sense to you?
>
> A:   I've done this a long time. I have never seen a spreadsheet that purported to use the broad evidence approach…[38]
>
> . . .
>
> Q:   Is the basis for this opinion what you just described in terms of your belief that the ACV was more than the policy limits and should have been paid?

---

[34] Order entered 8/19/13 [Doc. No. 41].
[35] Howarth Dep. 26:21-27:10.
[36] *Elswick v. Nichols*, 144 F. Supp. 2d 758, 763 (E.D. Ky. 2001) aff'd sub nom. *Elswick v. Pikeville United Methodist Hosp. of Kentucky, Inc.*, 50 F. App'x 193 (6th Cir. 2002)("Plaintiff's counsel has so violated the letter and spirit of Fed.R.Civ.P. 26(a) that suppression of this witness' testimony is mandated.").
[37] See, e.g., *Elswick*, 144 F. Supp. 2d at 768; *Pride v. BIC Corp.*, 218 F.3d 566, 578 (6th Cir. 2000)("District courts have broad discretion to exclude untimely disclosed expert-witness testimony.").
[38] Howarth Dep. 24:17-21. Incredibly, this testimony suggests Howarth has never seen an ACV calculation that is based upon Kentucky's Broad Evidence Rule in *American States Ins. Co. v. Mo-Lex, Inc.*, 427 S.W.2d 236 (Ky. App. 1968).

A: Yes. In other words, the calculation that's on that broad evidence rule spreadsheet that the adjuster prepared…I never have seen anything like that.[39]

. . .

Q: Let me clarify: What obligation or duty exists for an insurance company of the three approaches you just discussed to pay the one that's most advantageous to the insured?

A: That is the obligation. In a broad evidence rule, valuation of a loss, where – that's what the states that provide for that do. According to the National Underwriters Association, when you get finished with the calculations, you pick the one that is most favorable to the policyholder. That's good faith adjusting, that's that right way to do it. That's the way I was trained, that's the way I train adjusters, and that's the way the National Underwriters Association says you're supposed to do it.[40]

These opinions clearly exceed the scope of the Howarth Estimate – the only written document that remotely resembles a rule-compliant "expert report" – and they should not be presented to the jury in this case. Instead, Howarth's testimony should be strictly limited to the information contained in the Howarth Estimate.

### 3. Howarth's proposed testimony is directly contradicted by Kentucky law.

In addition to the fact that these opinions are not included in the Howarth Estimate (rendering them absolutely inadmissible under *Elswick*), they are also contrary to Kentucky law. So not only does Howarth purport to offer testimony (i.e., "State Auto was wrong to use multiple valuation methods; the Broad Evidence Rule permits multiple valuation methodologies, but requires the figure most favorable to the insured") which is outside the proper bounds for an expert witness, his proffered testimony is a completely incorrect statement of Kentucky law.

---

[39] Howarth Dep. 37:4-11.
[40] Howarth Dep. 40:7-21.

Kentucky's Broad Evidence Rule permits the trier of fact to consider all evidence logically tending to determine the value of the property at issue.[41] The case law makes clear that "there is no exclusive method for determining actual cash value of damage to buildings."[42] Consequently, Howarth should be prohibited from testifying that State Auto's adjuster was a) required to calculate the actual cash value using any one particular method or b) required to rely upon the methodology which yielded the highest number to the insured; as such testimony is contrary to well-settled law. Instead, the jury should hear the evidence and determine for themselves what they believe the building's fair market value was.[43]

Howarth has also taken the position that it was contrary to the Policy terms to calculate the actual cash value using any method other than the subtraction method (replacement cost of the building less applicable depreciation):

> Q: So you believe that in the policy that Mr. Blacklock had, that State Auto was obligated to write him a check for replacement cost to value minus depreciation to represent actual cash value?
>
> A: Yes. This policy describes how the insured property is to be valued in the event of a loss, and it is from replacement cost less depreciation to arrive at an actual cash value – the cost to repair or replace.[44]
>
> . . .
>
> Q: So, in your mind, the policy, the way that it's written, does not allow for the valuation for ACV purposes as market value?
>
> A: I don't remember any language in the policy that said the way a loss would be calculated was based on market value. I know that Kentucky is a broad evidence rule state, but I also know that after you come up with the various evidentiary methods and get to dollar figures using that, whether it's a market approach or replacement cost approach or insurance to value approach, you're supposed to pick the one that's the most advantageous to

---

[41] *Am. States Ins. Co. v. Mo-Lex, Inc.*, 427 S.W.2d 236, 238 (Ky. 1968)(citations omitted).
[42] *Snellen v. State Farm Fire & Cas. Co.*, 675 F. Supp. 1064, 1068 (W.D. Ky. 1987).
[43] *State Auto. Mut. Ins. Co. v. Cox*, 218 S.W.2d 46, 47 (1949), citing *Ohio Cas. Ins. Co. v. Stewart*, 76 S.W.2d 873, 878 (Tex. Civ. App. 1934)("Actual cash value of property is price it will bring in fair market after fair and reasonable efforts to find purchaser who will pay highest price, or fair or reasonable cash price for which property can be sold in market.").
[44] Howarth Dep. 30:20-31:2.

the insured. That's the way adjusters are trained. And, so, no. Obviously, that would have been the lesser of all of them, and it was a mistake to claim only that.[45]

It is well established that the interpretation and construction of an insurance policy are questions of law for the court.[46] In fact, Howarth was recently excluded as an expert witness in another insurance coverage case in this District for this very reason.[47] In *Carneal*, the Court agreed with the insurer's argument that Howarth's proposed expert testimony should be excluded "because his opinions amount to little more than pure legal conclusions that would not assist the trier of fact in understanding or determining the issues…"[48]

In summary, Howarth's anticipated testimony that State Auto improperly calculated the Defendant's claim should be excluded. This type of opinion is not based on specialized knowledge, but rather Howarth's own subjective belief.[49] Nor should Howarth be permitted to offer testimony regarding his interpretation of insurance policies or their terms, because this testimony usurps the trial court's function. Moreover, neither of these subject areas were a part of any written expert report provided by Howarth, leaving them outside the scope of what testimony, if any, this Court should allow.

## **CONCLUSION**

For the reasons set out above, State Auto respectfully requests entry of an Order excluding Howarth's testimony. In the event Howarth's testimony is not excluded in its entirety,

---

[45] Howarth Dep. 39:16-40:6.
[46] *E.g.*, *Eckstein v. Cincinnati Ins. Co.*, 469 F.Supp.2d 455, 461 (W.D. Ky. 2007) (citing *K.M.R. v. Foremost Ins. Grp.*, 171 S.W.3d 751, 753 (Ky. Ct. App. 2005)); *Charter Oak Fire Ins. Co. v. Coleman*, 273 F.Supp.2d 903, 906 (W.D.Ky.2003); see also *Dowell v. Safe Auto Ins. Co.*, 208 S.W.3d 872, 875 (Ky. 2006) ("It is well established that construction and interpretation of a written instrument are questions of law for the courts.").
[47] *Carneal v. Travelers Cas. Ins. of Am.*, 5:12-CV-00174, 2013 WL 5939879 (W.D. Ky. Nov. 5, 2013) (attached hereto as Exhibit 4).
[48] *Id*. at *3.
[49] *Demaree v. Toyota Motor Corp.*, 37 F. Supp. 2d 959, 961 (W.D. Ky. 1999)(expert's subjective belief or unsupported speculation will not satisfy Fed.R.Evid. 702).

State Auto requests entry of an Order limiting his testimony to the information disclosed solely in the Howarth Estimate – which is his opinion as to the replacement cost of the church building.

>Respectfully submitted,
>
>**FOWLER BELL PLLC**
>
>*/s/ Matthew D. Ellison*
>Barry M. Miller
>Matthew D. Ellison
>300 West Vine Street, Suite 600
>Lexington, KY  40507-1660
>Telephone:  (859) 252-6700
>Facsimile:  (859) 255-3735
>*BMiller@FowlerLaw.com*
>*MEllison@FowlerLaw.com*
>**ATTORNEYS FOR PLAINTIFF,**
>**STATE AUTO PROPERTY & CASUALTY**
>**INSURANCE COMPANY**

4820-5073-0519, v.  2