# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF KENTUCKY
# OWENSBORO DIVISION

CIVIL ACTION NO. 4:11CV-149-JHM

STATE AUTOMOBILE PROPERTY &
CASUALTY COMPANY                                                      PLAINTIFF

VS.

THERE IS HOPE COMMUNITY CHURCH
By and Through its Pastor, Darrell Blacklock                        DEFENDANT

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on Plaintiff State Automobile Property & Casualty Company's ("State Auto") Motion for Summary Judgment or Alternatively Partial Summary Judgment [DN 53] and Motion to Exclude the Testimony of Charles Howarth [DN 52]. Fully briefed, these matters are ripe for decision.

## I. BACKGROUND

This case arises out of a fire on June 15, 2010 that substantially damaged a church building ("Building") located at 892 Bethel Church Road in Beaver Dam, Kentucky. Mr. Darrell Blacklock ("Defendant") held an insurance policy ("Policy") with State Auto covering the Building. State Auto does not dispute that the Policy required it to pay Defendant as a result of the fire. However, by this action, State Auto seeks a declaration as to the amounts owed under the policy.

As to coverage for the Building, the Policy entitled Defendant to be paid either the "actual cash value" ("ACV") or the replacement cost value ("RCV") of the property. On August 12, 2010, Defendant submitted a Proof of Loss that claimed an ACV for the Building of $40,000. After receiving Defendant's Proof of Loss, Plaintiff conducted an arson investigation in order to

determine whether it owed coverage for the Building and ultimately determined it owed coverage. On May 19, 2011, State Auto's adjuster, Mr. Jack Dickens, received an email from Defendant inquiring as to when he would receive a "proposal on the Church building and the contents." [Email: Request for Proposal, DN 53-4, at 1]. That proposal was communicated to the Defendant in some manner but the record is not entirely clear how. An examination of the exhibit at DN 53-5 reveals that Mr. Blacklock already had the proposed actual cash value figure of $48,358.17 when he emailed Mr. Dickens on May 22, 2011 at 6:03 PM, asking how much more money would there be if the congregation decided to rebuild. In response to that inquiry, Mr. Dickens sent the following email on May 23, 2011, at 4:35 AM:

> Darrell, total amount of replacement cost coverage available is $112,923.62 less actual cash value of $48,358.17 or an additional amount of $64,565.45 available. The replacement cost coverage is subject to policy conditions and requirements. You can move forward on debris removal using the lowest bidder. When this work is completed I will need a signed statement from the contractor indicating it has been done. Thanks, Jack

[Email: Proposed ACV, DN 53-5, at 1]. Defendant had another inquiry asking whether the church had to be rebuilt on the same site in order to get the remaining $64,565.45. He was told by Mr. Dickens that the church could be rebuilt on another location. Later that afternoon, the Defendant emailed Mr. Dickens the following:

> Jack:
> we've looked at your preliminary figures and we accept those as the undisputed amount. As you know there will probably be more questions along the way as we decide if we're going to rebuild or etc.
>
> Thank You
>
> Darrell Blacklock
>
> P.S.
> How soon should we expect those amounts?

[Email May 23-Acceptance, DN 53-7, at 1]. State Auto sent payment to Defendant on May 31, 2011 in the amount of $48,358.17 for the ACV related to the Building. Defendant subsequently cashed the check received from Plaintiff. On August 12, 2011, Defendant submitted an Amended Proof of Loss statement to Plaintiff indicating an ACV of the Building to be at $209,465.50. Defendant arrived at the new ACV following an estimate prepared by the Howarth Group, Inc.

In addition to the $48,358.17 paid for the Building, Plaintiff sent checks for Business Personal Property, Debris Removal, and Extra Expenses, which are amounts also covered under the Policy. Defendant also submitted a claim related to Business Income, but Plaintiff denied coverage for this claim. Based on the briefing for this case, Defendant maintains that State Auto owes him additional sums under the Policy for Business Income and rental payments used to secure property for church services.

## II. STANDARD OF REVIEW

Before the Court may grant a motion for summary judgment, it must find that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party bears the initial burden of specifying the basis for its motion and identifying that portion of the record that demonstrates the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Once the moving party satisfies this burden, the non-moving party thereafter must produce specific facts demonstrating a genuine issue of fact for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48 (1986).

Although the Court must review the evidence in the light most favorable to the non-moving party, the non-moving party must do more than merely show that there is some

"metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). Instead, the Federal Rules of Civil Procedure require the non-moving party to present specific facts showing that a genuine factual issue exists by "citing to particular parts of materials in the record" or by "showing that the materials cited do not establish the absence . . . of a genuine dispute[.]" Fed. R. Civ. P. 56(c)(1). "The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." Anderson, 477 U.S. at 252. It is against this standard the Court reviews the following facts.

## III. ANALYSIS

### A. Building Coverage

Plaintiff raises two issues on summary judgment concerning coverage for the Building. First, Plaintiff contends that it does not owe Defendant additional sums for the ACV of the Building because the parties settled that amount during the email communications in 2011. Alternatively, Plaintiff seeks to have the Court declare that the term actual cash value used, but not defined, in the Policy means "fair market value" under Kentucky law and that there is no sole or exclusive method for determining the fair market value of an item. Second, Plaintiff moves the Court to declare that Defendant may not now receive funds for replacement cost because he failed to comply with the notification and rebuilding requirements of the Policy.

**1. Settlement of ACV for the Building**

Plaintiff contends that the email communications between the parties culminated in a settlement of $48,358.17 for the ACV of the Building. Specifically, State Auto argues that Defendant understood the amounts as outlined by Mr. Dickens, accepted those amounts in his responsive email, and then cashed the check for the amount identified as the ACV. In response,

Defendant maintains that he has the right to submit an amended Proof of Loss in order to recover more under the Policy. Plaintiff does not dispute the ability of an insured to submit an amended Proof of Loss but asserts that the insured must do so prior to reaching an agreement on a settlement as to the amount owed under the Policy.

In reviewing the email correspondence, the Court must determine whether the communications constituted a valid settlement of Defendant's claim for coverage of the Building. "[S]ettlement agreements are a type of contract and therefore are governed by contract law." Frear v. P.T.A. Industries, Inc., 103 S.W.3d 99, 105 (Ky. 2003) (citation and internal quotation marks omitted). "Generally, the interpretation of a contract, including determining whether a contract is ambiguous, is a question of law for the courts . . ." Cantrell Supply, Inc. v. Liberty Mut. Ins. Co., 94 S.W.3d 381, 385 (Ky. App. 2002) (citations omitted). A contract contains ambiguities "if a reasonable person would find it susceptible to different or inconsistent interpretations." Id. (citations omitted). However, if the contract lacks ambiguities, then a court is limited to only the intentions of the parties contained within the four corners of the document. Id.

State Auto describes the first email sent from Jack Dickens on May 23, 2011 to Mr. Blacklock as an offer for the ACV of the Building. As noted above, it appears that the ACV figure was communicated to the Defendant in some fashion prior to that, but in any event, it is undisputed that the Defendant offered $48, 358.17 as the actual cash value of the building. The email mentioned above details both a proposed amount for the replacement cost of the Building and the "actual cash value" of the Building. Defendant's acceptance email is unequivocal as evidenced by the statement, "we accept those as the undisputed amounts." [Email May 23-

Acceptance, DN 53-7, at 1]. There is little doubt as to the terms of the contract or the existence of an offer and acceptance.

Defendant does not raise any defenses to the formation of a contract. Instead, Defendant maintains that the policy allows him to submit an amended Proof of Loss. While it is true that the Defendant can amend his proof of loss, he needed to do so before he reached a settlement with the insurance company. However, the amended Proof of Loss was made after he had already accepted the ACV and RCV as the "undisputed" amounts. Therefore, the Court finds that Defendant accepted State Auto's proposed amounts related to the Building's ACV and RCV, and summary judgment is **GRANTED** on that issue. As such, Plaintiff's alternative argument concerning the proper method for determining the ACV is **DENIED** as **MOOT**.

**2. Use of RCV Funds**

The next issue concerns whether Defendant's alleged inaction prevents him from recovering the remaining $64,565.45 as a replacement cost. Plaintiff maintains that the terms of the Policy prohibit Defendant from now seeking these funds. In order to recover amounts for the RCV, the Policy states as follows:

6. Loss Payment

   In the event of loss or damage covered by this policy:

   a. At our option, we will either:

      (1) Pay the value of lost or damaged property;

      (2) Pay the cost of repairing or replacing the lost or damaged property
   …
      (c) You may make a claim for loss or damage covered by this insurance on an actual cash basis instead of on a replacement cost basis. In the event you elect to have loss or damage settled on an actual cash value basis, you may still make a claim on a replacement cost basis if you notify us of your intent to do so within 180 days after the loss or damage.

> (d) We will not pay on a replacement costs basis for any loss or damage:
>
>> (i) Until the lost or damaged property is actually repaired or replaced; and
>>
>> (ii) Unless the repair or replacement are made as soon as reasonably possible after the loss or damage.

[Policy, DN 53-2, at 60-61].

Plaintiff argues that Defendant failed to notify it of his intention to rebuild or replace the Building within 180 days. Additionally, Plaintiff notes that Defendant's deposition testimony reveals that he does not even have a future plan to rebuild because he believes there are insufficient funds to do so. In reliance on Snellen v. State Farm Fire and Cas. Co., 675 F. Supp. 1064 (W.D. Ky. 1987), Plaintiff argues that Defendant's inaction and lack of intent to rebuild forecloses his opportunity to now access the RCV funds. In interpreting a similar provision, the court in Snellen concluded that the insured could not recover funds provided by the RCV because "no repair or replacement ha[d] been made or attempted." Snellen, 675 F. Supp. at 1067.

The Defendant does not appear now to be claiming that he has a right to the RCV. His response notes that the terms of the policy are not is dispute. His main focus is the amount of the ACV. In any event, he certainly has not offered any proof that he notified Plaintiff of his intent to rebuild within the 180 days as required by the Policy. Nor is there any dispute that the church has not been rebuilt. The Policy is unambiguous in the requirement that the insured actually rebuild or replace the damaged property in order to access funds outlined in the RCV provisions. Therefore, the Court finds that Defendant is not entitled to recover the additional $64,565.45 identified as RCV.

**B. Other Coverage**

Plaintiff next seeks to have the Court declare that it has fully compensated the Defendant for all loss covered by the Policy and that it owes no additional coverage. Specifically, Plaintiff argues that Defendant does not advance any facts through his testimony or that of his expert to suggest any additional coverage is owed for personal property, business income or other expenses. In response, Defendant argues that his testimony and that of Mr. Dickens supports additional claims for coverage under the Policy. Additionally, Defendant faults the Plaintiff for failing to determine the other amounts owed during the discovery process.

Plaintiff, as the moving party in this action, faces the initial burden of demonstrating the absence of a genuine issue of material fact. Fed. R. Civ. P. 56(a). Plaintiff may do so by either citing to specific materials in the record to demonstrate the absence of fact or "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(B). In this case, Defendant did not attempt to categorize his damages as required by Rule 26. His Rule 26 disclosures were never supplemented. When asked about the sums owed in discovery, the only documents he identified concerned the Building loss. When asked about the sums in his deposition, he deferred to his expert. When the expert was asked, he said that was beyond the scope of his testimony. No supplemental expert report was received and discovery is now closed. The Plaintiff has made a showing that no genuine issue of fact exists regarding Defendant's claim for additional expenses. Plaintiff has shifted the burden to the Defendant to show that there is record evidence of a genuine issue of fact. The only effort Defendant made was to argue that the record supports a claim for rental expenses. Defendant references Mr. Dickens' deposition, but his testimony does not support Defendant's position. Defendant reproduces a

8

portion of his deposition in which he discusses rental payments made to his brother for the use of some property. However, he fails to supply the Court with a copy of this testimony, and therefore, the full context of these statements cannot be ascertained.

Rule 37(c)(1) states that "[i]f a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless. Fed. R. Civ. P. 37(c)(1). In fact, "[t]he Sixth Circuit has interpreted the Rule 37(c)(1) exclusionary sanctions to be automatic and mandatory after a violation of Rule 26(a)." Chavez v. Waterford School Dist., 2010 WL 3975314, *2 (E.D. Mich. Oct. 8, 2010) (citing Vance v. United States, 1999 WL 455435 (6th Cir. 1999)). The burden is squarely placed on Defendant to demonstrate harmlessness. Roberts ex rel. Johnson v. Galen of Virginia, Inc., 325 F.3d 776, 782 (6th Cir. 2003) (citations omitted) ("We agree with the circuits that have put the burden on the potentially sanctioned party to prove harmlessness."). However, Defendant has failed to justify the lack of disclosure other than attempt to blame Plaintiff for not pursuing the questioning further at Defendant's deposition. Defendant has the obligation to disclose under Rule 26(a) without Plaintiff even having to request the information. Clearly, Defendant's failure to disclose is not harmless as it is one of the few issues being disputed in this case. Because discovery is closed and a summary judgment motion has been filed, the time for disclosure has long since passed. The Defendant is thus precluded from offering any evidence of other loss due to his lack of disclosure. Therefore, Plaintiff owes no additional coverage.

**C. Expert Testimony of Charles Howarth [DN 52]**

Because the Court previously determined that Defendant accepted the proposed Building ACV in email correspondence with Plaintiff, expert testimony on the issue is unnecessary.

Therefore, Plaintiff's motion to exclude expert testimony of Charles Howarth is **DENIED** as **MOOT** at this time, and the issue may be re-visited later if necessary.

D. **Summary Judgment on Defendant's Counterclaims**

Finally, Plaintiff contends that the Court should grant summary judgment as to Counts I, II, and VIII of Defendant's Counterclaim if it finds for Plaintiff on all other issues. However, the record does not reflect the precise nature of these claims and it is difficult to determine if any genuine issues of material fact exists for them. Therefore, summary judgment is **DENIED** as to Counts I, II, and VIII of Defendant's Counterclaim and the Plaintiff is granted leave to file a renewed motion seeking summary judgment on these counterclaims.

## IV. CONCLUSION

For the reasons set forth above, **IT IS HEREBY ORDERED** Plaintiff State Automobile Property & Casualty Company's ("State Auto") Motion for Summary Judgment [DN 53] is **GRANTED in part** and **DENIED in part**. It is **DENIED** as to Plaintiff's alternative argument concerning the proper method for calculating the ACV. It is also **DENIED** as to summary judgment on Counts I, II, and VII of Defendant's Counterclaim. It is **GRANTED** to all other aspects.

**IT IS FURTHER ORDERED** that Plaintiff's Motion to Exclude the Testimony of Charles Howarth [DN 52] is **DENIED** as **MOOT**.

*[signature]*

**Joseph H. McKinley, Jr., Chief Judge**
**United States District Court**

cc: counsel of record

May 15, 2014